**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Josephine Brandon, et al., | No. CV-25-01538-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Vascular Access Certification Corporation, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Josephine Brandon's ("Brandon") Motion for a Temporary Restraining Order ("TRO") and a Preliminary Injunction ("PI") (the "Motion") against Defendants Association for Vascular Access ("AVA") and Vascular Access Certification Corporation ("VACC"). (Doc. 48). The Motion is supported by Brandon's Declaration and supporting exhibits. (Doc. 49). The Court ordered expedited responses from AVA and VACC (Doc. 50), both of which have since been filed. (Docs. 49 & 53). VACC has also filed a Request for Judicial Notice asking the Court to take judicial notice of certain records of the United States Patent and Trademark Office ("USPTO") in connection with VACC's Response. (Doc. 55).

For the reasons set forth below, the Court will deny Brandon's Motion as to both AVA and VACC and vacate the July 27, 2026, hearing on this matter.

## I. Background

Brandon says she is the co-owner, along with William Hart, of the disputed mark in question. (Doc. 49 at ¶ 3; *see also* Ex. 1 to Brandon's Declaration, Brandon's Trademark

Registration at Doc. 49 at 8–9). The mark is the letters "VA-BC" with a heart over the hyphen and a jagged line over the heart meant to represent an EKG line. (Ex. 1, Brandon's Trademark Registration). Brandon states that she obtained a registration from the USPTO on February 22, 2022, but also says that her organization has used the mark since at least 2010. (Doc. 49 at ¶ 6).

Brandon's organization provides individuals with vascular training and certification in the fields of vascular access and infusion therapy. (*Id.* at ¶ 5). The individuals using the organization's services include nurses and other healthcare professionals. (*Id.* at ¶ 10). Brandon alleges that she first became aware of AVA and VACC's infringing use of her mark in December of 2023. (*Id.* at ¶ 13). She links the infringing use in particular to the mention of the letters "VA-BC" (a stand-in abbreviation for "Vascular Access-Board Certified," which she also says was used). (*Id.* at ¶¶ 13–15). According to Brandon, her organization and AVA and VACC are in the same industry, target the same individuals for their services, and there is significant consumer confusion regarding their overlap. (*Id.* at ¶¶ 11–12). Based on the above, Brandon seeks a temporary restraining order and a preliminary injunction to prevent both AVA and VACC from using the words "VA-BC" in their promotional materials and in connection with their services. (Doc. 43).

## II.    Legal Standard

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders. Fed. R. Civ. P. 65. The standard for both forms of relief is the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Further, a temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974). Like a preliminary injunction, the Court may issue a temporary restraining order if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4)

that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### III.    Discussion

Brandon argues that she is entitled to a TRO and PI because all four of the *Winter* factors tip in her favor. But the Court finds that none of them do. To begin with, at this juncture, Brandon cannot show that she is the exclusive or senior user of the mark she claims is being infringed by AVA and VACC. Moreover, at least at this point, her assertions about irreparable harm are merely conclusory.

#### A.    Success on the Merits of Trademark Infringement and Unfair Competition Claims under the Lanham Act

Brandon argues she is likely to succeed on the merits of her claims because she has a federally registered trademark. (Doc. 48 at 2). AVA disputes that they have used the mark at all and VACC disputes Brandon's senior and exclusive user status. (Doc. 53 at 6 & Doc. 54 at 3). The Court agrees that Brandon has not shown that AVA has infringed on the disputed mark and she has also not shown, at this juncture, that she is the senior and exclusive user of the mark.

To prevail on a claim of trademark infringement under the Lanham Act, a plaintiff must show the following: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion. *See* 15 U.S.C. § 1114; *see also Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1144 (9th Cir. 2011). The test for unfair competition under the Lanham Act is nearly identical: "whether the public is likely to be deceived or confused by the similarity of the marks." *New W. Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979) (citations omitted). If the plaintiff can show that there is a protectable ownership interest in the mark, then courts to proceed to analyze consumer confusion under the following non-exhaustive *Sleekcraft* factors: (1) the strength of the protected mark; (2) proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the degree of care customers are likely to exercise in purchasing the goods; (6) the accused infringer's intent in selecting the mark; (7) the marketing channels used; and (8)

the likelihood of expansion into other markets. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979), *abrogated in part on other grounds by Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003)).

### i. Claims against AVA

Brandon has not shown she is likely to succeed on the merits of her trademark infringement and unfair competition claim against AVA. As correctly pointed out by AVA, nothing in Brandon's Motion or attached exhibits show that AVA used an infringing mark in connection with vascular credentialing services. In fact, AVA disputes that it is even in the vascular credentialing industry such that it would provide a reason for AVA to use an infringing mark. (Doc. 53 at 10). Throughout AVA's Response to Brandon's Motion, AVA states that Brandon only references VACC's website, and fails to proffer any support for the assertion that AVA used an infringing mark. (*See generally* Doc. 53). Combing through the record, the Court also cannot find anything in the attached exhibits to support the finding that AVA used a mark like Brandon's. *Mitchell v. Reddington Structural Sols., LLC*, 2025 WL 1593132, at *3 (D. Nev. June 4, 2025) (coming to a similar conclusion). The Court therefore finds that Brandon is unlikely to succeed on the merits of its claims as to AVA.

### ii. Claims against VACC

The Court finds Brandon is also unlikely to succeed on her claims against VACC. Brandon states in her declaration that she is the co-owner of the federally registered "VA-BC" mark and that the mark has been registered since February 22, 2022. (Doc. 48 at 5; *see also* Doc. 49 at ¶ 1). She also states that she benefits from her prior use of the mark in commerce "since at least 2010." (Doc. 48 at 5). While federal registration of a mark supplies prima facie evidence of Brandon's exclusive right to use the mark, that presumption can be rebutted. If VACC can show that it used the mark in commerce first and most importantly, prior to the federal registration of the mark, VACC can rebut the presumption that Brandon is the exclusive user of the mark. *World Triathlon Corp. v. Dunbar*, 2006 WL 897586, at *4 (D. Haw. Apr. 6, 2006). Here, VACC has proffered

significant evidence to rebut this presumption.

VACC states that it is the senior user of the mark because it launched its vascular credentialing services back in 2010, whereas Brandon registered the mark in 2021, and Brandon herself obtained her credentials to perform vascular services from VACC. (Doc. 54 at 2–3). Additionally, VACC says that it has overseen more than 11,500 examinations, offered about 9,833 certifications, and provided ongoing support to approximately 5, 515 people it has certified. (*Id.*) The volume of the credentials VACC has managed strongly indicates that its use of the VACC logo was continuous and ongoing. *World Triathlon Corp.*, 2006 WL 897586, at *4) (reiterating the two steps to show senior rights in a mark: (1) that the use of the mark began before the mark's registration; and (2) that the use has been used continuously since that time). Though Brandon does argue that she has used the mark "since at least 2010," nothing attached to her Motion attests to the veracity of this claim. Relief as extraordinary as a TRO or PI cannot be predicted on general allegations and conclusory assertions. *Fry v. Cap. One Fin. Corp.*, 2025 WL 1397163, at *3 (N.D. Cal. May 14, 2025), *appeal dismissed*, 2025 WL 2375266 (9th Cir. June 6, 2025) (collecting cases finding that at least some evidence going to the merits is required to warrant injunctive relief).

Another finding that cuts against Brandon as the exclusive user of the mark is that her USPTO registration specifically disclaims exclusive use of the letters "VA-BC" themselves. (Doc. 55 at 2; *see also* Brandon's Trademark Registration at Doc. 49 at 9). Outside of the use of those specific pairings of letters, Brandon does not claim that VACC has infringed on her mark in any other way. But Brandon has no exclusive right to use the letters themselves and the USPTO has stated that the letters themselves are "merely descriptive." (Brandon's Trademark Registration at Doc. 49 at 9). Because the Court finds that Brandon cannot show that she is the senior user with the exclusive right to use the mark, the Court need not address the *Sleekcraft* factors and instead denies Brandon's requested relief as to VACC outright.

**B.      Irreparable Harm**

Brandon argues that absent the issuance of her requested relief, she will suffer irreparable harm to her business and reputation.  (Doc. 48 at 6–7).  She provides a small smattering of examples of what she believes are customers confused between her organization and AVA and VACC.  (*Id.*)  Both AVA and VACC contest the assertion that she has suffered irreparable harm.  (Doc. 53 at 12 & Doc. 54 at 10).  The Court agrees that Brandon has not suffered irreparable harm to warrant the granting of either a TRO or a PI.

Congress in 2020 amended the Lanham Act to include a presumption of irreparable harm if a likelihood of success on the merits was established at the preliminary injunction stage.  *See* 15 U.S.C. § 1116; *see also* Pub. L. 116-260, § 226, 134 Stat. 1182, 2208 (2020).  By its very terms, the presumption only applies once the likelihood of success on the merits has been settled. *Zamfir v. Casperlabs, LLC*, 528 F. Supp. 3d 1136, 1150 (S.D. Cal. 2021).

The Court does not find that Brandon will suffer irreparable harm absent an injunction.  At least one court has stated that merely raising "serious questions as to the merits" instead of definitively showing a likelihood of success on the merits is not enough to warrant a finding of irreparable harm.  *Zamfir*, 528 F. Supp. at 1150. Here, however, Brandon has not even raised serious questions as to the merits. Further, Brandon has not presented any case-specific evidence of irreparable harm and has only made general allegations of consumer confusion and loss of business reputation.  *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1071 (N.D. Cal. 2015) (finding that generalities and platitudes without specific evidence are not enough to find irreparable harm).  Brandon's lack of specific evidence pointing to irreparable harm would be more excusable had this case not been pending since May of 2025. (Doc. 1).  Adding to the lack of evidence to support irreparable harm, the fact that Brandon waited approximately fourteen months, since bringing her Complaint in May of 2025, to bring an emergency motion, also undermines her claims of irreparable harm. *Pedego, LLC v. All. Wholesalers, Inc.*, 2012 WL 12892900, at *3 (C.D. Cal. Sept. 14, 2012) (stating that delays in seeking emergency relief necessarily negate the need for that relief).  For those reasons, the Court finds that

Brandon will not suffer irreparable harm in the absence of a preliminary injunction.

### C.      Balancing of the Equities and Public Interest

The Court finds that neither the balancing of the equities nor the public interest favor granting a preliminary injunction against AVA or VACC.  "The absence of showing a likelihood of success on the merits, and of irreparable harm leaves nothing to tip the balance of equities in Plaintiff's favor or suggest that an injunction would be in the public interest." *Herrera v. Pain Mgmt. Comm. Staff at Corcoran State Prison*, 2012 WL 6698027, at *4 (E.D. Cal. Dec. 21, 2012); *see also Troutman v. Symple Lending LLC*, 2025 WL 2019790, at *7 (C.D. Cal. June 18, 2025), *adhered to on reconsideration sub nom. Eric Troutman et al. v. Symple Lending LLC.*, 2026 WL 1803242 (C.D. Cal. June 15, 2026). Therefore, the Court does not find that the final two *Winter* factors support issuing a preliminary injunction against either AVA or VACC.

Accordingly,

**IT IS ORDERED** that Brandon's Motion for a Temporary Restraining Order and Motion for a Preliminary Injunction (Doc. 48) is **denied.**

**IT IS FURTHER ORDERED** that the Motion for Judicial Notice (Doc. 55) is **granted**, to the extent such records were referenced in this Order.

**IT IS FINALLY ORDERED** that the Temporary Restraining Order/Preliminary Injunction Hearing set for July 27, 2026, is **vacated.**

Dated this 22nd day of July, 2026.

Honorable Diane J. Humetewa
United States District Judge

- 7 -